UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD DANIELS,<br>   *Petitioner,*<br><br>*v.*<br><br>UNITED STATES OF AMERICA,<br>   *Respondent.* | Civil No. 3:15cv1551 (JBA)<br><br>March 1, 2016 |

**RULING ON PETITIONER'S MOTION UNDER § 2255**

Petitioner Richard Daniels filed this habeas corpus petition [Doc. # 1] under 28 U.S.C. § 2255 on October 26, 2016, alleging that his trial counsel rendered ineffective assistance. The Government opposes [Doc. # 4] the petition. For the following reasons, Mr. Daniels's motion is denied in part and held under advisement in part.

**I.    Background**

On January 5, 2011, Mr. Daniels was indicted for one count of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and (b)(1)(B)(iii) and 21 U.S.C. § 846, and one count of conspiracy to maintain a drug-involved premises within 1,000 feet of a school and a housing facility, in violation of 21 U.S.C. §§ 846 and 860. *United States v. Daniels*, No. 3:11cr1 [Doc. # 1] (D. Conn.). On December 13, 2011, the Government offered Mr. Daniels a plea agreement, pursuant to

which it would have sought a sentence of 140 to 175 months' imprisonment.[1] (*See* Ex. 1 to § 2255 Pet. at 4.) Mr. Daniels rejected the offer.

On January 4, 2012, the grand jury returned a superseding indictment that increased the quantity of cocaine base alleged from 28 grams to 280 grams. *Daniels*, No. 3:11cr1 [Doc. # 347]. The Government offered Mr. Daniels a new plea agreement on April 12, 2012, pursuant to which it would have sought a sentence of 135 to 168 months' imprisonment.[2] (*See* Ex. 2 to § 2255 Pet. at 4.) Mr. Daniels again rejected the offer. On July 3, 2012, the Government offered a final plea agreement, pursuant to which it would have sought a sentence of 108 to 135 months' imprisonment.[3] (*See* Ex. 3 to § 2255 Pet. at 4.) Mr. Daniels rejected the offer.

On August 1, 2012, the Court held a *Frye* hearing, during which the following colloquy took place:

> The Court: Let's, because we have had this transition and because we are really very near to trial, let's make sure there is no misunderstanding on what is offered and what is being rejected so that we don't have the unhappy situation later on of a defendant – defendants saying they didn't

---

[1] The base offense level was calculated to be 30, based on a quantity of 196 to 280 grams of crack cocaine. Adding two points for possession of a firearm and subtracting three points for acceptance of responsibility, Mr. Daniels's total offense level was calculated to be 29. Based on the parties' understanding at the time this offer was made, Mr. Daniels was assessed as having a criminal history category ("CHC") of V.

[2] The base offense level was calculated to be 32, based on a quantity of 280 to 840 grams of crack cocaine. Adding two points for possession of a firearm and subtracting three points for acceptance of responsibility, Mr. Daniels's total offense level was calculated to be 31. His CHC was revised to III.

[3] The base offense level was calculated to be 32, based on a quantity of 280 to 840 grams of crack cocaine. Subtracting three points for acceptance of responsibility, Mr. Daniels's total offense level was calculated to be 29. His CHC remained III.

> understand what the offer was and had they understood it they would have taken it. So, let's make sure we have no misunderstandings here. . . .
>
> Ms. Dayton: Currently, . . . [the three defendants are] all charged in a mandatory minimum of ten years and a maximum of life conspiracy count. . . . Mr. Daniels, again, is facing a ten to life mandatory minimum. Pursuant to plea negotiations with his attorneys, we had offered to again let him plead to a lesser included offense where he would be allowed to attempt to argue down to 60 months. His guidelines are around 108 months. . . . Again, after trial, based upon role enhancement and firearm enhancement, we expect his guidelines to be above 15 years, your Honor.

(*Frye* Hr'g Tr., Ex. 1 to Gov't's Opp'n at 10, 11, 14.) Following this colloquy, Mr. Daniels affirmed that he understood the terms of the plea agreement; he had discussed the agreement with his counsel; and he had decided not to accept the agreement and to proceed to trial. (*Id.* at 14.)

Mr. Daniels was later convicted of one count of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin and 280 grams or more of cocaine base and one count of conspiracy to maintain a drug-involved premises. *Daniels*, No. 3:11cr1 [Doc. # 544]. At sentencing, the Government sought a sentence within the Guidelines range, calculated by Probation to be 324 to 405 months' imprisonment. *Id.* [Doc. ## 668, 706]. Mr. Daniels, through his attorney, challenged several of the enhancements sought by the Government and requested a below-Guidelines sentence in the range of 121 to 151 months. *Id.* [Doc. # 698]. The Court found the Guidelines range to be 324 to 405 months' imprisonment. *Id.* [Doc. # 774] at 42. Nonetheless, the Court departed downward and sentenced Mr. Daniels to 228 months' imprisonment. *Id.* at 71.

## II.     Legal Standard

3

Section 2255 allows prisoners in federal custody to move for their sentences to be vacated, set aside, or corrected if their "sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner claiming ineffective assistance must prove that: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "any deficiencies in counsel's performance [were] prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688 & 692 (1984). A court assessing such a claim "must be highly deferential" to counsel, must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The two-part *Strickland* test applies to claims of ineffective assistance of counsel in the context of plea negotiations, including challenges to the rejection of a plea offer. *See Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (applying *Strickland* to claim that counsel was ineffective in advising petitioner to reject plea offer); *Cf. Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying *Strickland* to claim that attorney misinformed petitioner regarding plea offer leading petitioner to accept guilty plea). To succeed on such a claim

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been

less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385.

### III. Discussion

Petitioner here contends that his trial counsel was ineffective in (1) misinforming him about the consequences of rejecting a plea agreement; and (2) failing to object to the admission of prejudicial evidence at trial. Each of these claims is considered in turn.

#### A. Rejection of Plea Agreement

Mr. Daniels alleges that his trial counsel "provided erroneous legal advice that induced him to reject favorable plea agreements offered by the government." (Mem. Supp. § 2255 Pet. [Doc. # 1-1] at 2.) Specifically, Mr. Daniels claims that his counsel advised him "that he would be exposed to the same amount of time" in prison whether he took the plea agreement or not. (*Id.* at 4.) "Counsel's only caveat concerning the amount of time [Mr. Daniels] faced if he went to trial was that he may receive 12 to 18 months over the range that was contained in the agreement." (*Id.*) Mr. Daniels asserts that "[t]his advice lead [sic] [him] to conclude that there was no real benefit in accepting the plea offer." (*Id.*) Had he known that he was facing a Guidelines range of 324 to 405 months' imprisonment, Mr. Daniels avers, he would have accepted the plea agreement offer of 108 to 135 months' imprisonment, and because the Court accepted the plea of seven others in his case, he contends, the Court likely would have accepted the agreement. (*Id.* at 7.)

The Government responds that Mr. Daniels's claim is belied by the transcript of the *Frye* hearing, as well as by transcripts of calls Mr. Daniels made from Wyatt Detention Center both before and after the *Frye* hearing. (*See* Opp'n at 12–20.)

5

During the *Frye* hearing, the Government notes, the prosecution informed Mr. Daniels that he was "facing a ten to life mandatory minimum" if he did not accept the plea agreement, and that "after trial, based upon role enhancement and firearm enhancement," the Government "expect[ed] his guidelines to be above 15 years." (*Id.* at 13.) Following the hearing, Mr. Daniels is recorded telling an unidentified female "If I lose trial, I'm facing ten to 15. . . . I ain't gonna plead to nine years and . . . walk out of there with ten. I might as well shoot my shot. I know I got a good shot." (*Id.* at 14–15.) In a second call after the *Frye* hearing, Mr. Daniels similarly stated "My f**king prosecutor said if I lose trial, I'm, I'm getting up to ten to 15 years." (*Id.* at 16.) These statements, the Government contends, demonstrate that Mr. Daniels "was well-aware [sic] that if he proceeded to trial that he was going to be a much lengthier sentence than if he chose to plead guilty." (*Id.*)

Further, the Government argues, other recorded statements by Mr. Daniels demonstrate that in the absence of a plea agreement guaranteeing him a sentence of 60 months' imprisonment, he would not have pled guilty. (*Id.* at 17.) Specifically, Mr. Daniels is recorded as saying (among other statements): "I told my lawyer, if it's gonna be directly 60 months, I'll take it"; "I'm not takin', I'm not pleading to 60 months and walk out with 96 months. . . . I said but if they give me a guaranteed 60 months, if the judge sign off on it, I'd take it"; and "I told my lawyer, man, I'll take 60 months. If not, I'm going to trial." (*Id.* at 17–18.)

The Court does not find the Government's arguments persuasive. With respect to the performance prong of *Strickland* (i.e., what Mr. Daniels's attorney told him about his exposure if he did not accept a plea agreement), the Government has put forth no

6

evidence to support a dismissal of Mr. Daniels's claim.[4] As to the prejudice prong, the Court finds the record sufficiently concerning that it concludes that dismissal of Mr. Daniels's petition is not warranted on the pleadings.

The *Frye* hearing transcript reveals that although the Government alerted Mr. Daniels that he was facing "above 15 years" if he did not accept the plea agreement, at no time did the Government explain to Mr. Daniels that by "above 15 years," it meant 15 years above 15 years (the Guidelines range was approximately 27 to 34 years). Nor do the call transcripts demonstrate that Mr. Daniels understood the potential consequences of turning down the plea agreement. Mr. Daniels is recorded as repeatedly stating that he was facing "ten to 15 years," and he repeatedly evinces the understanding that the difference in his potential exposure to prison time between taking the plea agreement and rejecting it was minimal. (*See* Opp'n at 18 ("Even if I lose, I'm still not gonna get that much time, my lawyer said"); *id.* ("If I lose trial, I'll probably get around the same amount of time anyway"); *id.* at 19 ("God forbid, if I lose [at trial] and still get the chance to get the same amount of time").) Further, the Court finds the fact that Mr. Daniels asserted that he would not accept any plea agreement other than a guarantee of 60 months' imprisonment to be of limited probative value because had Mr. Daniels understood that he faced up to 405 months' imprisonment if he lost at trial, he may well have taken a different position with respect to the plea agreement.

---

[4] Although the Government states in a footnote that Mr. Daniels's trial counsel would provide an affidavit by "approximately December 4, 2015" (Opp'n at 11 n.3), as of the date of this Ruling, no such affidavit has been produced.

7

There is, additionally, good reason to believe that had Mr. Daniels accepted the plea agreement, the Government would not have withdrawn it, the Court would have accepted it, and Mr. Daniels would have received a lower sentence. Twelve defendants in Mr. Daniels's criminal case were offered plea agreements, for terms of imprisonment ranging from time served to 165 months' imprisonment, and each of the plea agreements were accepted. Moreover, it is unlikely any intervening event would have caused the Government to withdraw the plea, as it was offered to Mr. Daniels less than a week before jury selection.

Because Mr. Daniels has raised a genuine issue regarding whether he received ineffective assistance of counsel with respect to his decision to turn down the offers of plea agreements by the Government, and the record is insufficient to enable the Court to rule on his petition, an evidentiary hearing on the subject will be scheduled, prior to which Mr. Daniels will be appointed counsel. *See* R. Gov. § 2255 Proc. 8.

### B. Prejudicial Evidence

Mr. Daniels's second claim of ineffective assistance is premised on the late Honorable Judge Kravitz's pretrial ruling that "the Government [could] introduce evidence of Defendants' gang membership, but the Government [could] not introduce evidence that the gang was the Bloods" because such information was "not strongly relevant to the Government's case" and was unfairly prejudicial. *Daniels*, No. 3:11cr1 [Doc. # 454] at 3. Mr. Daniels asserts that in light of this ruling, his counsel should have objected when the Government sought to introduce into evidence three photographs depicting associates of Mr. Daniels's holding guns and wearing red, and three wiretap recordings in which, according to Mr. Daniels, he and an associate say: "word to Blood."

(Mem. Supp. at 10.) The red in the photographs and the "word to Blood" comments, Mr. Daniels asserts, are obvious references to the Bloods, and his counsel's failure to object to their introduction into evidence rendered his assistance ineffective. (*Id.*)

The Government responds that only two of the three photographs include individuals wearing red, and Mr. Daniels is not in those photographs; it is not at all clear that jurors would have understood the red in the other photographs to be indicative of membership in the Bloods; and none of the three recordings cited by Mr. Daniels feature anyone stating "word to Blood." (Opp'n at 20–22.) Further, the Government argues, "because the photographs were highly relevant to the firearms offense with which" Mr. Daniels's co-defendant "Mr. Reyes[,] was charged, an objection from Daniels would likely have been futile." (*Id.* at 22.) As a result, "from a tactical standpoint, it was reasonable for Daniels's counsel to refrain from objecting under the belief that doing so would only serve to draw more attention to the photographs to no legitimate end." (*Id.* at 23.)

The Court agrees. The few splashes of red in the photographs are not so prominent that they would cause a typical juror to conclude that the individuals in the photographs were members of the Bloods.[5] Moreover, because, as the Government notes, the individuals in the photographs are displaying guns, the photographs were highly relevant to the Government's case, and the red in the photographs is not likely to have been found so prejudicial as to outweigh the clearly probative value of the photographs. Indeed, Judge Kravitz noted in his ruling on Defendants' motion in limine that "[t]he

---

[5] The individuals in the photographs are not clad in all red; in the first photograph, of four individuals pictured, one is wearing a red sweatshirt and red hat and a second is holding a red bandana; in the second, of three individuals, one has what appears to be a red bandana on top of his hat.

Court will reconsider this decision if the Government wishes to introduce specific pieces of evidence, such as photographs or recorded conversations, which are inextricably linked to the Bloods." *Daniels*, No. 3:11cr1 [Doc. # 454], at 3. Because Mr. Daniels is not likely to have succeeded on any objection to the introduction of the photographs, he has not shown that he was prejudiced by his counsel's failure to raise such an objection.

With respect to the recorded conversations, having reviewed the recordings, the Court can find no reference in them to the Bloods. If such a reference lurks within the recordings, it is garbled and not likely to have been noticed by jurors. This is particularly so because, as Mr. Daniels admits, the written transcriptions of the calls provided by the Government to jurors do not include any such statements. The Court therefore finds that Mr. Daniels suffered no prejudice from his counsel's failure to object to the introduction of the phone calls into evidence. As such, Mr. Daniels has not satisfied his burden of demonstrating that he received ineffective assistance of counsel with respect to the Government's introduction of the photographs and wiretaps into evidence.

**IV.     Conclusion**

For the foregoing reasons, Mr. Daniels's Motion [Doc. # 1] to Vacate, Set Aside, or Correct Sentence is DENIED as to his claim regarding his counsel's failure to object to the introduction of photographs and wiretap recordings during his trial. Mr. Daniels's claim regarding his counsel's failure to explain to him the consequences of refusing the plea agreement offered to him remains under advisement pending appointment of counsel and an evidentiary hearing.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of March, 2016.